Maia CAPLAN

v.

FELLHEIMER EICHEN BRAVERMAN & KASKEY and David L. Braverman.

Civ. A. No. 94–CV–7506.

United States District Court, E.D. Pennsylvania.

April 27, 1995.

---

William H. Ewing, Carl Oxholm, III, Connolly Epstein Chicco Foxman Engelmyer and Ewing, Philadelphia, PA, for plaintiff.

Carolyn P. Short, Kenneth M. Kolaski, Philip W. Newcomer, Reed Smith Shaw & McClay (Helen M. Braverman, Fellheimer Eichen Braverman and Kaskey, of counsel), Philadelphia, PA, for defendants.

## MEMORANDUM

JOYNER, District Judge.

Today's discovery dispute asks whether Defendants can depose non-party witness Gregory Heller for a second day, and whether the attorney-client privilege applies to communications made between Plaintiff Maia Caplan and Heller. Heller was Caplan's boyfriend from March, 1994 until November, 1994. He also was an associate at William Ewing's law firm (Ewing is Caplan's attorney in this matter) from 1991 until December 31, 1994. Caplan was discharged from her employment with Defendants on October 4, 1994, and sought legal representation from Ewing's law firm on that same day.

We begin by noting that a large part of this dispute has been mooted as a result of Plaintiff's representation that she "does not now oppose a second deposition" of Heller. Brief in Opp. at 1. Accordingly, we Deny as Moot the portion of Defendants' Motion that seeks leave to continue Heller's deposition.

The persisting dispute is the extent to which the attorney-client privilege has any relevance to the relationship between Heller and Caplan. In Pennsylvania, the attorney-client privilege provides: "in a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa.Cons.Stat.Ann. § 5928 (1982).

Defendants assert that "Caplan's counsel made clear that Caplan would assert the attorney client privilege to prevent Mr. Heller from answering any questions regarding Caplan during the period from October 4, 1994 through December 31, 1994." Brief in Supp. at 15. Defendants assert that Heller was never Caplan's attorney, and so there is no basis for her assertion of the attorney-client privilege. Brief in Supp. at 9. They seek this Court to preclude Caplan from invoking the privilege at Heller's deposition.

First, Defendants argue that the attorney-client privilege only applies to communications made by a client, to a lawyer who acts in his or her capacity as a lawyer, for the purpose of securing legal advice. They argue that Caplan has always referred to Ewing as her counsel, and that Heller never entered an appearance with this Court in this matter, nor signed any filings as Caplan's attorney. Accordingly, they argue, Heller never was Caplan's attorney, but only a boyfriend who happened to be an attorney. Because the asserter of a privilege bears the burden of establishing the privilege, (*Stabilus v. Haynsworth, Baldwin, Johnson & Greaves*, 144 F.R.D. 258, 267–78 (E.D.Pa. 1992)) Defendants argue that this assertion of privilege "should be narrowly construed and found not applicable in this case." Brief in Supp. at 15.

In contrast, Caplan asserts that Heller was her attorney in this matter. In her support, she provides an affidavit of Heller, wherein he avers that while employed at Ewing's firm, he "was one of Maia Caplan's attorneys" and was assigned to her case for a substantial time. Given this affidavit, we find that there is sufficient evidence to indicate the existence of an attorney-client relationship, such that the attorney-client privilege can be asserted when appropriate.

Moreover, Caplan argues that Ewing made it clear at the beginning of Heller's deposition that she would assert the attorney-client privilege only on matters clearly protected. Accordingly, she argues, there is

no basis for Defendants' assertion that Heller refused to answer any questions about the time between October 4, 1994 and December 31, 1994. Heller himself gave an example of the types of communications he would answer questions on, and the types of communications he would regard as privileged. He stated that the communications between he and Caplan during the relevant time:

> were all over the map. There were some that were virtual strategy discussions. There were some that were clearly in my private capacity. A perfect example is where [Caplan] screams and wakes us both up in the middle of the night because she's having a nightmare about Braverman's chasing her. That's not privileged, that's just factual, something communicated to me as a private person.

Heller Dep. at 270–71.

Defendants did not, apparently, seek to test the limits of what Heller or Caplan would consider privileged, but simply assumed that any question concerning the time between October 4, 1994 and December 31, 1994 would not be answered. Heller Dep. at 272. Heller's description of what he would consider privileged and not privileged appears to be accurate under applicable law. In addition, Ewing indicated that he would err on the side of liberality when making judgment calls as to the privileged nature of a communication. In other words, he, on Caplan's behalf, would regard as privileged "only matters that were directly involved with the lawsuit itself." Heller Dep. at 5. This too seems to be in line with the applicable law of placing the burden of showing privilege on the one asserting it. *Stabilus,* 144 F.R.D. at 267–78.

Accordingly, we deny the portion of Defendants' Motion that seeks to preclude Heller from asserting the attorney-client privilege at his deposition. We have found sufficient evidence to support the existence of an attorney-client relationship. Accordingly, Caplan is entitled to protect that relationship by asserting the privilege when a question seeks Caplan's confidential communications to Heller for the purpose of securing legal advice.